IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,472


STATE OF KANSAS,
*Appellee*,

v.

AARON DOUGLAS UNRUH,
*Appellant.*


SYLLABUS BY THE COURT

When an insufficient record prevents resolving an issue raised for the first time on appeal, an appellate court abuses its discretion by invoking an exception to the general rule against doing so.


Review of the judgment of the Court of Appeals in an unpublished opinion filed October 15, 2021. Appeal from Marion District Court; MICHAEL F. POWERS, judge. Oral argument held March 30, 2023. Additional briefing completed May 1, 2023. Opinion filed March 21, 2025. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.


*Darby VanHoutan*, of Kansas Appellate Defender Office, argued the cause, and *Patrick H. Dunn*, of the same office, was with her on the briefs for appellant.


*Steven J. Obermeier*, assistant solicitor general, argued the cause, and *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellee.


PER CURIAM: Aaron Unruh acknowledged without objection that he would be subject to violent offender registration for 15 years under the Kansas Offender Registration Act before pleading no contest to two counts of aggravated endangerment of

1

a child and one count of criminal restraint. See K.S.A. 22-4902(e)(1)(H); K.S.A. 22-4906(a)(1)(K). But on appeal, he claimed offender registration violated his due process rights in two ways: First, KORA did not provide him an opportunity to contest the district court's "discretionary" factual findings, which he alleges subjected him to registration; and second, KORA lacks a clear burden-of-proof standard for that fact-finding. Over the State's preservation objection, a Court of Appeals panel took up these arguments and rejected them on the merits. *State v. Unruh*, No. 122,472, 2021 WL 4808279, at *4-10 (Kan. App. 2021) (unpublished opinion).

On review, we hold the panel erred by considering these challenges. The essential elements of procedural due process are notice and an opportunity to be heard at a meaningful time in a meaningful manner. But before engaging in that analysis, a court must first determine whether a protected liberty or property interest is involved so it can decide the nature and extent of the process that is due. *State v. N.R.*, 314 Kan. 98, 113, 495 P.3d 16 (2021). Unruh's failure to advance these theories before the district court robs us of a record to assess his claimed liberty or property interests. He simply contends KORA imposes infringing fees and burdens by summarizing the statutory obligations and then leaves the rest to the imagination. That is not enough to carry the day.

Unruh's unpreserved theories are not amenable to appellate review as presented. See *State v. Allen*, 314 Kan. 280, 284, 497 P.3d 566 (2021) ("[W]hile no one disputes the right to be present at all critical stages of a criminal proceeding is a fundamental right for purposes of the unpreserved issue rubric, that designation by itself is not an automatic gateway for appellate court consideration on the merits."). We affirm the judgment although our reasoning necessarily differs from the panel's. See *State v. Williams*, 311 Kan. 88, 91, 456 P.3d 540 (2020) (affirming Court of Appeals as right for the wrong reason).

2

FACTUAL AND PROCEDURAL BACKGROUND

The State initially charged Unruh with aggravated indecent liberties with a child and aggravated indecent solicitation of a child, after an interaction he had with an 11-year-old girl, who was a friend's daughter. Unruh ultimately pled no contest to two counts of aggravated endangerment of a child and one count of criminal restraint in exchange for the State dismissing the original charges. The plea agreement specified, "I . . . understand that I will be subjected to . . . 15 years of violent offender registration."

The parties filed the plea agreement with the district court on November 8, 2019. That same day, the court specially set a hearing to accept Unruh's plea, because his jury trial was scheduled for the next week. During that hearing, the State proffered a previously filed affidavit to factually support the plea. Unruh and his counsel both stipulated to the State's proffer. The court found a sufficient factual basis for the charges and accepted Unruh's no contest pleas.

Also at that hearing, Unruh was present for this exchange about KORA registration:

"[THE PROSECUTOR]:  There's a registration requirement, due to the criminal restraint. The victim is under the age of 18.

"THE COURT:  Okay.

"[THE PROSECUTOR]:  It's a 15-year registration.

"THE COURT:  . . . [A]s you know, this was . . . reached here in the middle of this week, and we set it this morning. My AA is—was sick yesterday. She's sick today. I did not have the registration notification form available. *Do either of you[] object if we take care of that at sentencing?*

3

"[DEFENSE COUNSEL]: *Defendant does not*.

"[THE PROSECUTOR]: *No*." (Emphases added.)

Unruh's presentencing investigation report, which was prepared after the plea hearing, again noted the criminal restraint conviction required 15 years of violent offender registration; the victim was less than 18 years old; and Unruh was not the victim's parent. Unruh accepted the report with only a few exceptions that did not challenge these statements. His attorney asked the court to adopt the report's recommendations.

On January 14, 2020, the district court found Unruh's criminal history score was H and granted probation terms with an underlying 13 months' imprisonment on the aggravated endangerment convictions. On the criminal restraint conviction, it sentenced him to 12 months in jail to run consecutive to the other two convictions.

Near the end of the proceedings, this exchange occurred regarding offender registration:

"[DEFENSE COUNSEL]: Judge, I don't think we've ever completed registration. I don't know how this got (unintelligible).

"THE COURT: We haven't done registration?

"[UNRUH]: Uh-uh.

"[DEFENSE COUNSEL]: We didn't do it at (unintelligible).

"[UNRUH]: You pushed it out to this date.

4

"THE COURT: Did you just give me one copy?

. . . .

"THE COURT: [Defense counsel], will you come up, please? Thank you.

"[Defense counsel]'s going to hand you a copy of the notice of (unintelligible) to register, which advises you that as of this date, which actually the conviction took place, previous, but in any event, we'll go with this date. You have three business days to report to a registering law enforcement agency, in the county of conviction, which is this county, or as well as in any place where you live, work, or attend school.

"So, if you were to move to another county, you would have to register in that county, as well, Or if you lived in one county, worked, or went to school in another, you'd have to register in both. It gives the convictions, as well as the identifying information, for you. Would you sign it, please. Once you've looked at it, that will confirm that you have seen it.

"[DEFENSE COUNSEL]: (Unintelligible.)

"THE COURT: . . . I'm going to give a copy back, [defense counsel], that I have signed. And I've also marked that the registration is open to public inspection. I don't think that's, really, an issue, here, but that's a part of it."

The document referred to is the "Notice of Duty to Register" form stating that Unruh was convicted of two counts of aggravated endangering a child and criminal restraint and that violent offender registration was required by law. Unruh did not object to registration or to completing the form at sentencing. The court checked the box for "Criminal Restraint—K.S.A. 21-5411 (except by parent, and only when victim is less than 18 years of age)" on the journal entry. The court and Unruh signed the form.

5

Unruh appealed, advancing various issues including two due process arguments against KORA raised for the first time. He asserted KORA violated his due process rights by lacking a specific burden of proof or process to contest what he characterized as "a discretionary finding" under K.S.A. 22-4902(e)(1)(H) that a "violent offender" is anyone, other than a parent, convicted of criminally restraining a victim less than 18 years old. The State countered that Unruh improperly raised these contentions for the first time on appeal, the district court made no discretionary finding as Unruh claimed, and the caselaw established the burden of proof as a preponderance of the evidence.

Despite the apparent preservation problem, the panel considered Unruh's due process assertions under the exception for a possible denial of a fundamental right. *Unruh*, 2021 WL 4808279, at *2. It then disposed of both claims. First, it held Unruh already "had many meaningful opportunities to object or challenge" the factual basis requiring his registration. 2021 WL 4808279, at *8. Second, it agreed with other Court of Appeals panels that a preponderance-of-the-evidence standard could support a district court's discretionary findings. 2021 WL 4808279, at *9-10 (citing *State v. Epp*, No. 121,872, 2020 WL 6930597 [Kan. App. 2020] [unpublished opinion], and *State v. Ford*, No. 119,328, 2019 WL 3242420 [Kan. App. 2019] [unpublished opinion]).

Of the various issues Unruh petitioned this court to review, we agreed to consider just one: "By not providing a burden of proof or a process to contest a discretionary finding pursuant to K.S.A. 22-4902(e)(1)(H), KORA violates due process." We also granted the State's conditional cross-petition for review, which argues the panel should not have decided Unruh's unpreserved claims, erroneously interpreted K.S.A. 22-4902(e)(1)(H), and failed to place the burden on Unruh to prove he was not subject to registration.

Our jurisdiction is proper. K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

## PRESERVATION

We begin with the State's argument that the panel erroneously addressed the merits of Unruh's unpreserved due process claim because that threshold question's resolution ends this appeal. We hold the panel abused its discretion. See *Allen*, 314 Kan. 280, Syl. ¶ 2 ("For the court to invoke an exception, the unpreserved issue must also be amenable to resolution on appeal.").

### *Standard of review*

An appellate court exercises discretion when it applies an exception to the general rule against addressing an issue raised for the first time on appeal. But it is not enough for a party simply to assert an exception's existence. The unpreserved issue must be amenable to resolution on appeal, and even then, there is no obligation to consider it. When an insufficient record prevents resolving an unpreserved issue, an appellate court abuses its discretion by invoking an exception. *Allen*, 314 Kan. 280, Syl. ¶¶ 2-5.

### *The panel abused its discretion.*

The panel correctly recognized appellate courts generally do not consider arguments raised for the first time on appeal but may do so when necessary to serve the ends of justice or prevent denial of fundamental rights. See *Unruh*, 2021 WL 4808279, at *2 (citing *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 [2019] [listing exceptions]). But in agreeing to address Unruh's claims on the merits, the panel did not

7

assess whether his due process theories were amenable to resolution on the merits given the existing record.

Unruh's challenge required him to demonstrate a definite, protected liberty or property interest and articulate how this interest was abridged under either theory without appropriate process. See *N.R.*, 314 Kan. at 113 (requiring a claimant to show a "protected liberty or property interest is involved"); *Murphy v. Nelson*, 260 Kan. 589, 598, 921 P.2d 1225 (1996) (procedural due process protects a "'definite liberty or property interest'"); cf. *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it."). Here, the record is silent on what specific individual liberty or property interest is at stake. Unruh simply cites to the statutory obligations and then launches into legal argument.

In *N.R.*, 314 Kan. at 112-14, the defendant raised a new constitutional claim for the first time on appeal, arguing the KORA provision mandating public dissemination of his registration information violated his procedural due process rights. The *N.R.* court invoked an exception and considered the unpreserved issue, noting affidavits in the record showed registration implicated the protected liberty interest of reputation. The court then answered a purely legal question and did not engage in fact-finding, which is a task typically reserved for the district court. 314 Kan. at 113 (citing *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548 [1972] [stating "(f)or '(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential'"]); see also *Allen*, 314 Kan. 280, Syl. ¶ 5; cf. *In re A.A.-F.*, 310 Kan. 125, 145-48, 444 P.3d 938 (2019) (analyzing a procedural due process claim based on the district court's finding that she received adequate notice of the hearing and did not appear).

In contrast, Unruh's appellate record lacks evidence to support his arguments that registration implicates a protected liberty or property interest. Whether fee requirements and various burdens accompanying offender registration impact his due process rights is neither a pure legal question nor established by law. And appellate courts in other jurisdictions have ruled against similar arguments. See, e.g., *Gunderson v. Hvass*, 339 F.3d 639, 644-45 (8th Cir. 2003) (rejecting a due process claim that the burdens of complying with the Minnesota predatory offender registration statute infringed on offenders' property interests); *State v. Guidry*, 105 Haw. 222, 228, 96 P.3d 242 (2004) (noting "registration alone does not involve a protected liberty interest" for sex offenders).

We conclude the panel erroneously considered the merits. See *State v. Gutierrez-Fuentes*, 315 Kan. 341, 347, 508 P.3d 378 (2022) (holding consideration of an unpreserved, constitutional claim with a deficient record under the fundamental-right exception was an abuse of appellate discretion). Still, we affirm the panel's judgment against Unruh as right for the wrong reason. Judgment of the district court is affirmed.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

\* \* \*

BILES, J., concurring: I agree with the court majority's decision as far as it goes, but a bit more needs to be said. The fact-finding problems articulated above are aggravated by Unruh's misguided characterization of the applicable statutory requirements as "discretionary findings." K.S.A. 22-4902(e)(1)(H) requires no judicial fact-finding. It provides: "'Violent offender' includes any person who . . . is convicted of

9

. . . criminal restraint . . . except by a parent, and only when the victim is less than 18 years of age."

The statute does not mandate fact-finding on the record once Unruh pled no contest. In fact, classifying an offender under KORA requires findings "on the record" in only three circumstances—K.S.A. 22-4902(b)(2) (sex offender:  any person who committed a sexually violent crime, unless the court "on the record" finds the act involved nonforcible conduct, the victim was at least 14, and the offender was not more than four years older than the victim), (c)(19) (sexually violent crime:  any "sexually motivated" act, unless the court "on the record" finds the act involved nonforcible conduct, the victim was at least 14, and the offender was not more than four years older than the victim), and (e)(2) (deadly weapon). Other than these three, the plain statutory language does not require judicial fact-finding on the record to classify a defendant like Unruh as a KORA offender. See *State v. Nguyen*, 304 Kan. 420, 422, 372 P.3d 1142 (2016) (providing courts do not typically transfer meaning between a statute's subsection when one includes specific language and another does not).

As the State argues, Unruh's criminal restraint conviction triggered offender registration by operation of law, meaning no judicial fact-finding existed to warrant appellate review of the registration order. Unruh's flawed premise renders the argument dead at the starting gate. See *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003) ("[D]ue process does not entitle [Doe] to a hearing" because disclosure of registry information is based solely on an offender's conviction.); *N.R.*, 314 Kan. at 114 (holding the original adjudication satisfied defendant's due process rights to impose KORA registration since he had an opportunity to contest fact triggering his registration).

*  *  *

STEGALL, J., concurring: I concur with the result reached by the majority, but for different reasons. As I stated in *State v. Juarez*, "While I concur with the conclusion that Juarez' due process rights were not violated, I do so precisely because the district court's registration order was not valid. That is, the lower court's failure to give notice of a registration obligation at the time of Juarez' conviction conclusively demonstrates that Juarez is not an 'offender' required to register under the Kansas Offender Registration Act (KORA)." 312 Kan. 22, 28, 470 P.3d 1271 (2020) (Stegall, J., concurring).

As in *Juarez*, so too here. The district court failed to make the necessary findings *at the time of conviction* that would have rendered Unruh an "offender" as a matter of law. I fail to understand Justice Biles' assertion that "Unruh's criminal restraint conviction triggered offender registration by operation of law, meaning no judicial fact-finding existed to warrant appellate review of the registration order." *State v. Unruh*, 320 Kan___, ___P.3d___, slip op. at 10 (Biles, J., concurring). Unruh could only be an offender under KORA if his criminal restraint conviction was characterized by certain specific facts that were never found by any fact-finder—at least not until his sentencing occurred. But that is too late under KORA. *State v. Thomas*, 307 Kan. 733, 746, 415 P.3d 430 (2018) (distinguishing the current statutory language in KORA from previous versions which directed courts to inform offenders of their duty to register at the time of sentencing).

Hence, whether Unruh is actually an offender required to register under KORA is left in doubt due to the peculiar nature of the arguments made by Unruh on appeal and the majority's refusal to reach the crucial question: is Unruh an offender or not? Fortunately, should he so desire, there are other legal avenues for Unruh to challenge the

11

State's position that he is in fact an offender obligated to register. But those questions will have to wait for another day.

WALL, J., joins the foregoing concurring opinion.

* * *

ROSEN, J., dissenting:  I dissent because I continue to disagree with the majority's position that KORA is not punitive. See *State v. Stoll*, 312 Kan. 726, 737, 480 P.3d 158 (2021) (Rosen, J., dissenting). In line with my previous opinions, I would reverse the registration requirement because Unruh did not have the opportunity to have a jury decide the facts that would increase his punishment. See *State v. Thomas*, 307 Kan. 733, 751, 415 P.3d 430 (2018) (Rosen, J., concurring).