IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,167

STATE OF KANSAS ex rel. KANSAS HIGHWAY PATROL,
*Appellee,*

v.

$381,620 in U.S. CURRENCY,

and

BRYCE ROBERT FULEKI,
*Appellant.*

SYLLABUS BY THE COURT

It is an error of law, and therefore an abuse of discretion, for a district court to rely on evidence without ruling on the admissibility of that evidence after a timely objection has been made.

Review of the judgment of the Court of Appeals in 65 Kan. App. 2d 596, 571 P.3d 35 (2025). Appeal from Saline District Court; PAUL J. HICKMAN, judge. Oral argument held March 10, 2026. Opinion filed May 15, 2026. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

*Sef Krell*, pro hac vice, of Law Offices of Sef Krell, of Encino, California, argued the cause, and *Julie McKenna*, of McKenna Law Office, P.A., of Salina, was with him on the briefs for appellant.

*Ryan J. Ott*, assistant solicitor general, argued the cause, and *Stacy R. Bond*, of Kansas Highway Patrol, *Anthony Powell*, solicitor general, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellee.

1

The opinion of the court was delivered by

STEGALL, J.:  Bryce Robert Fuleki was driving a rental car on I-70 near Salina when he was stopped by the Kansas Highway Patrol (KHP). During the stop, officers eventually searched the vehicle and discovered a locked, hard-shell, carry-on-sized suitcase in the back seat. Fuleki said that the suitcase belonged to a friend; he did not have the keys for the suitcase; and he declined to answer any more questions about the suitcase. Officers decided to pry open the suitcase.

Inside, officers found $381,620 in cash and a notebook with names of marijuana strains and prices. The highway patrol confiscated the cash and directed Fuleki to follow them to the KHP headquarters. At the KHP headquarters, Fuleki was given *Miranda* warnings and questioned. He repeatedly denied ownership of the suitcase and the cash. Officers eventually gave Fuleki a property disclaimer form, which Fuleki partially filled out and signed. Officers then held onto the cash and released Fuleki approximately four-and-a-half hours after the initial traffic stop.

Later, the State of Kansas, on behalf of the KHP, filed a notice of pending forfeiture in the district court. Fuleki filed a claim in the forfeiture proceeding asserting his interest in the money. The State filed a motion to strike Fuleki's claim and sought a default judgment. The State argued that because Fuleki had disclaimed ownership of the property—verbally and through the disclaimer form—he lacked standing to file any claim. Fuleki then filed an amended claim, specifically asserting that the cash was exempt from forfeiture because it was not proceeds from any violation of the Kansas Uniform Controlled Substances Act. He also filed a motion to suppress "all evidence" obtained as a result of any unreasonable search and seizure in violation of the Fourth Amendment. Included in the evidence Fuleki hoped to suppress were his statements to law enforcement and the written disclaimer.

2

Essentially, the district court had two related requests before it—one from each side. First, the court had the State's request to dismiss Fuleki from the case for lack of standing—relying on the written disclaimer as evidence that Fuleki had no interest in the cash. And second, the court had Fuleki's request to suppress the written disclaimer due to alleged Fourth Amendment violations during the search and seizure. The lower court simply took these requests in the wrong order, deciding that the "validity of the voluntary disclaimer needs to be addressed before the Court can hear the Motion to Suppress."

At that hearing, the district court heard testimony and reviewed a copy of the written disclaimer form. Ultimately the court determined that Fuleki's disclaimer was voluntary and effective—therefore Fuleki lacked an interest in the cash and had no standing to file a claim in the forfeiture action. Specifically, the court found "[i]f it hadn't . . . been for the disclaimer [there] wouldn't be an issue." After determining that Fuleki lacked standing to file a claim, the district court likewise determined Fuleki lacked standing to contest the validity of the stop through a motion to suppress.

The district court then dismissed Fuleki as a claimant from the forfeiture action. Fuleki timely appealed and the Court of Appeals reversed the district court, holding "the district court must examine the legality of the actions of law enforcement, through his motion to suppress, before it considers Fuleki's standing to assert his claim under K.S.A. 2019 Supp. 60-4111." *State ex rel. Kansas Highway Patrol v. $381,620 in U.S. Currency*, 65 Kan. App. 2d 596, 611, 571 P.3d 35 (2025). The Court of Appeals reasoned from principles of fairness, stating that because Fuleki was alone in the car, "no other person could assert his right to challenge his traffic stop" and it would be "patently unreasonable to bar him" from asserting "any such constitutional claim." *$381,620 in U.S. Currency*, 65 Kan. App. 2d at 609, 611. The State now seeks review of that ruling by this court.

Although our reasoning differs slightly, we affirm the panel's decision. See *State v. Unruh*, 320 Kan. 260, 261, 565 P.3d 825 (2025) ("We affirm the judgment although our reasoning . . . differs from the panel's.").

Whether a party has standing is a legal question reviewed de novo. See *In re Parentage of E.A.*, 319 Kan. 748, 759-60, 560 P.3d 1149 (2024). To the extent this case involves questions of statutory interpretation, those questions present a question of law over which appellate courts have unlimited review. *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024).

The Kansas Standard Asset Seizure and Forfeiture Act, as applied to Fuleki, is found in K.S.A. 2019 Supp. 60-4101 et seq. The dispute over Fuleki's standing is grounded in K.S.A. 2019 Supp. 60-4111(a), which states in part that "[o]nly an *owner* of or *interest holder* in property seized for forfeiture may file a claim." (Emphases added.) An "owner" is

> "a person, other than an interest holder, who has an interest in property. A person who holds property for the benefit of or as an agent or nominee for another person, or who is not in substantial compliance with any statute requiring an interest in property to be recorded or reflected in public records in order to perfect the interest against a good faith purchaser for value, is not an owner. An owner with power to convey property binds other owners, and a spouse binds the person's spouse, by any act or omission." K.S.A. 60-4102(j).

An "interest holder" is

> "a secured party within the meaning of the uniform commercial code, a mortgagee, lien creditor, judgment creditor or the beneficiary of a security interest or encumbrance pertaining to an interest in property, whose interest would be perfected against a good faith purchaser for value. A person who holds property the benefit of or as an agent or nominee for another person, or who is not in substantial compliance with any statute

requiring an interest in property to be recorded or reflected in public records in order to perfect the interest against a good faith purchaser for value, is not an interest holder." K.S.A. 60-4102(e).

The district court relied on Fuleki's written disclaimer to determine that Fuleki was not an "owner" or an "interest holder." Based on this finding, the district court held that Fuleki lacked the statutory ability to bring a claim under K.S.A. 2019 Supp. 60-4111(a) and therefore did not have standing in the forfeiture case.

In Kansas, both the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Kan. Const. Bill of Rights, § 15. Warrantless searches are per se unreasonable unless they fall within an exception to the warrant requirement. *State v. Crudo*, 318 Kan. 32, 35, 541 P.3d 67 (2024). The judicially created exclusionary rule is designed "to deter unlawful searches and seizures by prohibiting the prosecution's use of unconstitutionally obtained evidence." *State v. Perkins*, 310 Kan. 764, 767, 449 P.3d 756 (2019).

In 1965, the United States Supreme Court announced that "the constitutional exclusionary rule does apply to . . . forfeiture proceedings." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696, 85 S. Ct. 1246, 14 L. Ed. 2d 170 (1965). This is because although a forfeiture is technically a civil case, it is "quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." 380 U.S. at 700.

The only issue before us is whether the district court should have considered Fuleki's motion to suppress before making a definitive ruling on standing. Fuleki argues that the evidence of his statements and disclaimers should have been suppressed. See *United States v. Labat*, 696 F. Supp. 1419, 1425-26 (D. Kan. 1988) (abandonment [or

disclaimer] cannot be an involuntary result of the illegal conduct of law enforcement). Fuleki argues the district court erred by failing to rule on what was effectively his objection to the admissibility of the crucial evidence the State was relying on to demonstrate a lack of standing. Fuleki has argued throughout this case that the disclaimers themselves were inadmissible as fruit of the poisonous tree. See *State v. Ellis*, 311 Kan. 925, 933, 469 P.3d 65 (2020) (quoting *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 82 L. Ed. 2d 599 [1984]) ("[A] court may suppress the 'primary evidence obtained as a direct result of an illegal search or seizure' and 'evidence later discovered and found to be derivative of an illegality'—the so-called '"fruit of the poisonous tree"'—if it finds officers obtained evidence in violation of the Fourth Amendment.").

But the district court put the proverbial cart before the horse. A court must first *admit* evidence before relying on it to make a factual finding. See K.S.A. 60-401(a) ("'Evidence' is the means from which inferences may be drawn as a basis of proof in duly constituted judicial or fact-finding tribunals, and includes testimony in the form of opinion, and hearsay."); K.S.A. 60-402 ("Except to the extent to which they may be relaxed by other procedural rule or statute applicable to the specific situation, the rules set forth in this article shall apply in every proceeding, both criminal and civil, conducted by or under the supervision of a court, in which evidence is produced."); K.S.A. 60-407(f) ("all relevant evidence is admissible" unless prohibited by another operation of law). Such a principle is generally consistent with our precedent that parties may not rely or comment on facts not in evidence. *State v. Banks*, 306 Kan. 854, 862, 397 P.3d 1195 (2017) ("[I]t is clearly improper for a prosecutor to state facts that are not in evidence.").

And before admitting evidence offered by one party, the other party may object to the admission of that evidence on any number of grounds. See K.S.A. 60-404 ("A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record

objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."). It is incumbent upon the fact-finding court to first actually *rule* on such objections before relying on the evidence. K.S.A. 60-408 ("When the . . . admissibility of evidence . . . is in issue, the issue is to be determined by the judge."). Otherwise, the lower court abuses its discretion.

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024). It is an error of law, and therefore an abuse of discretion, for a district court to rely on evidence without ruling on the admissibility of that evidence after a timely objection has been made. Thus, the district court abused its discretion.

The erroneous admission or exclusion of evidence is subject to review for harmless error. See K.S.A. 60-261 ("Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). When an error implicates a constitutional right, the effect of that error must be assessed under the constitutional harmless error standard. *State v. Thornton*, 312 Kan. 829, 832, 481 P.3d 1212 (2021) (applying constitutional harmless error standard to evidence obtained in violation of Fourth Amendment).

When an error infringes upon a party's federal constitutional right, a court will declare a constitutional error harmless only when the party benefiting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record." *State v. Ward*, 292

Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]).

Here it is clear that the district court's reliance on the disclaimer was not harmless. In fact, the district court cited the disclaimer specifically *as being the reason* it determined that Fuleki lacked an interest in the cash, and therefore standing in the forfeiture action. We therefore affirm the panel's decision reversing the district court and remand the case to the district court for further proceedings consistent with this opinion. We reiterate that our decision today does not reach the merits of either Fuleki's motion to suppress or the State's claims concerning Fuleki's standing. We simply require the district court to first consider Fuleki's evidentiary objection before admitting and relying upon the contested evidence for any purpose.

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

LUCKERT, J., not participating.